## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HANSEL MERCEDES-CASTRO,

      Petitioner,

v.                                Case No. 8:16-cv-3347-VMC-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Hansel Mercedes-Castro, a Florida prisoner, filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 9.) Respondent filed a response opposing the amended petition. (Doc. 17.) Mercedes-Castro filed a reply. (Doc. 38.) Upon consideration, the amended petition is **DENIED**.

## I.   Procedural History

A state-court jury convicted Mercedes-Castro of first-degree murder, burglary of a dwelling or structure with a firearm, and attempted robbery with a firearm. (Doc. 18-2, Ex. 1a, pp. 172-74.) The state trial court sentenced Mercedes-Castro to concurrent terms of life imprisonment on the first-degree murder count, life imprisonment on the burglary count, and fifteen years' imprisonment on the attempted-robbery count. (*Id.*, Ex. 1, pp. 136-37.) The state appellate court *per curiam* affirmed the convictions. (*Id.*, Ex. 4.)

Mercedes-Castro then sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 13, pp. 23-75, 94-110, 142-47, 162-67.) The state trial court held an evidentiary hearing and denied Mercedes-Castro's claims. (*Id.*, pp. 80-86, 118-24, 150-52, 159-61, 171-72, 175-76, 405-17.) The state appellate court *per curiam* affirmed the denial of relief. (*Id.*, Ex. 18.) Mercedes-Castro also filed a petition alleging ineffective assistance of appellate counsel under Florida Rule of Appellate Procedure 9.141(d). (*Id.*, Exs. 10, 11.) The state appellate court denied the petition. (*Id.*, Ex. 12.) Mercedes-Castro subsequently sought federal habeas relief in this Court.[1] (Docs. 1, 9.)

## II.   Facts; Trial Testimony[2]

In the early morning hours of November 29, 2005, Derek Phillips was killed when gunshots were fired into his bedroom in Poinciana, Florida. The medical examiner concluded that a shot to Phillips's face was immediately fatal. Following the shooting, police found cash, a "large amount of marijuana," and drug paraphernalia in the house. (Doc. 18-2, Ex. 1c, pp. 327-28.)

Jose Cerrato worked as a barber in the Kissimmee and Poinciana area. His clients included Mercedes-Castro, Juan Carlos Cruz, Carlos Valentin, Edwin Lugo, and Jose Tejeda. Valentin owned a registered AK-47. In November 2005, Valentin

---

[1] In December 2016, this action was stayed pending the state court's resolution of Mercedes-Castro's successive Rule 3.850 motion. (Doc. 8.) The state trial court denied the motion in April 2019, and the state appellate court affirmed the denial of relief in April 2020. (Doc. 18-2, Ex. 23, p. 54; Doc. 18-2, Ex. 26.) Following the conclusion of the state-court proceedings, the Court reopened this action and set a briefing schedule on Mercedes-Castro's amended petition. (Docs. 10, 11.)

[2] This summary is based on the trial transcript.

wanted to sell the AK-47; Lugo, his friend and coworker, agreed to arrange a sale. Valentin gave Lugo the rifle. The same month, while Cerrato was cutting Lugo's hair, Mercedes-Castro, Cruz, and another man, Raza Rizvi, came into the barbershop and said they were looking for guns. Lugo stopped the haircut and went outside with the three men.

Rizvi's wife, Janice Ponce, saw Rizvi with Mercedes-Castro and Cruz around this time. Ponce and Rizvi lived in a hotel in Kissimmee. One evening shortly after Thanksgiving, Mercedes-Castro and Cruz came to the hotel. The men were dressed in black, wearing gloves on their hands and black stockings on their faces. Ponce heard Mercedes-Castro tell Rizvi and Cruz that they were going to rob a drug dealer in Poinciana. She also heard that Mercedes-Castro was "supposed to hold" an AK-47 during the robbery. (*Id.*, Ex. 1d, p. 525.) The men left around midnight. The following night, Mercedes-Castro and Cruz returned to the hotel to meet with Rizvi. Ponce learned that the three men had not robbed the drug dealer, apparently because "[t]he plan went wrong." (*Id.*, p. 527.) The men discussed the robbery again. Wearing the "same clothing" as the night before, the men left the hotel in Ponce's white four-door car. (*Id.*)

Jose Tejeda was friends with Mercedes-Castro and Cruz. Tejeda received a call from Cruz one night in late November 2005. Cruz offered Tejeda money for a ride to Poinciana. Tejeda went to pick up Cruz on a street corner. Tejeda also saw Mercedes-Castro, Rizvi, and an unidentified fourth man inside a white car. Mercedes-Castro and Rizvi left in the white car; Cruz and the unidentified man got into Tejeda's car and

3

told him to follow the white car. Tejeda heard the unidentified man say that they were going to do a "lick," meaning a robbery. (*Id.*, p. 603.) After the white car got a flat tire, Tejeda saw the men remove what he believed to be guns wrapped in a blanket from the trunk of the white car to the trunk of Tejeda's car. They then got in Tejeda's car. Mercedes-Castro and the unidentified man gave Tejeda directions.

Mercedes-Castro, Cruz, Rizvi, and the unidentified man—all of whom were dressed in black and wearing masks—got out of the car and went to the trunk before walking away. As Tejeda waited for them, he heard two or three gunshots and then saw them running back to his car. Tejeda drove away until the men told him to stop and open the trunk. The men got out and put the firearms in the trunk. Next, they directed Tejeda to stop at a hotel, where all four passengers got out of the car and removed the guns.

Ponce woke to find Mercedes-Castro, Cruz, and Rizvi in the hotel room. Ponce told Cruz to "step outside" because she did not "like him." (*Id.*, p. 539.) She noticed that Mercedes-Castro and Rizvi were acting "very paranoid." (*Id.*, p. 540.) In response to Ponce's questions about "what had happened," Mercedes-Castro explained that Rizvi "broke the window," whereupon the victim attempted to defend himself by shooting at the robbers. (*Id.*) Mercedes-Castro claimed that he "shot at [the victim] and just ran off." (*Id.*) He also said that, if the men were "questioned," they would say "they were at a bar." (*Id.*, p. 541.)

Mercedes-Castro later returned to Jose Cerrato's barbershop with a black trash bag that looked like it contained a long, heavy object. Mercedes-Castro told Cerrato

4

to give the bag to Edwin Lugo, the friend and co-worker of Carlos Valentin who had agreed to arrange a sale of Valentin's AK-47. Cerrato went to the business where Lugo and Valentin worked together. Lugo was not there, so Cerrato and Valentin opened the bag. They saw Valentin's AK-47 inside. Valentin took the rifle. Cerrato subsequently arranged to purchase the AK-47. But after Cerrato acquired it, a man nicknamed "Mouse" told him that it might have been used in a homicide. Cerrato wanted to get rid of the gun as quickly as possible, so he sold it to an acquaintance.

Following this sale, Special Agent Lisa Rousseau of the Florida Department of Law Enforcement ("FDLE"), under the supervision of Special Agent Robert Ura, worked with a confidential informant to purchase two AK-47s from a residence in Kissimmee. An FLDE technician determined that one of the guns was used to fire the bullet that killed Phillips. A check of the firearm's serial number revealed that it was registered to Valentin.

Following his arrest, Mercedes-Castro spoke to Rousseau and Detective Ivan Navarro. During the interview, he "said that Raza Rizvi must have been the individual to tell agents and law enforcement that [Mercedes-]Castro was involved in the homicide, and that Raza Rizvi talk[ed] too much." (*Id.*, Ex. 1c, p. 355.) The officers told Mercedes-Castro that they were "in possession of his latent fingerprints," and that "the gun could still be traced and looked at for fingerprints." (*Id.*, p. 356.) In response, Mercedes-Castro said, "[I]f you have my prints, then you need to check for everyone else's prints to include Raza Rizvi's." (*Id.*) The officers also mentioned "a rumor on the street that the victim had actually fired the first shots at the group." (*Id.*, p. 357.)

Mercedes-Castro said the rumor was "only half true before they put the spin on it." (*Id.*) The "spin," according to Mercedes-Castro, was that he "had fired the shot." (*Id.*)

Mercedes-Castro called three alibi witnesses at trial: Mercedes Mercedes (his mother), Joseph Principe (a friend), and Miguel Orengo (another friend). Mercedes Mercedes testified that Mercedes-Castro was home on the night of the robbery. Principe and Orengo likewise testified that, on the night of the robbery, they were with Mercedes-Castro in a FEMA trailer parked outside his house.

## III.   Standards of Review

### A.   AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on

6

a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

A decision involves an "unreasonable application" of clearly established federal law

"if the state court identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-

court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535

U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's

application of clearly established federal law is objectively unreasonable, and . . . an

unreasonable application is different from an incorrect one." *Id.* at 694; *see also*

*Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas

corpus from a federal court, a state prisoner must show that the state court's ruling on

the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement.").

The state appellate court affirmed Mercedes-Castro's convictions, as well as the

denial of postconviction relief, without discussion. These decisions warrant deference

under § 2254(d)(1) because "the summary nature of a state court's decision does not

lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.

2002). When a state appellate court issues a silent affirmance, "the federal court should

'look through' the unexplained decision to the last related state-court decision that

does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B.   Ineffective Assistance of Counsel

Mercedes-Castro alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mercedes-Castro must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Mercedes-Castro must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are

both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt"). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### C.    Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d

1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

## IV.   Discussion

### A.    Ground One, Sub-Claim A

Mercedes-Castro contends that trial counsel was ineffective for failing to "object to a general jury verdict [form]" on the grounds that "a special verdict form" was required. (Doc. 9, p. 5.) In his Rule 3.850 motion, Mercedes-Castro argued that "the verdict form for [the first-degree murder] count was defective in that it cannot be determined whether the jury convicted [him] based on the felony murder theory or premeditated murder." (Doc. 18-2, Ex. 13, p. 40.) He claimed that counsel should have requested a "special verdict form" requiring the jury to "make a special finding" that "the conviction was for either felony murder or premeditated murder." (*Id.*) Additionally, Mercedes-Castro faulted counsel for not objecting to the verdict form on the grounds that (1) it "failed to reference the charging document by stating that [he]

was 'guilty as charged,'" and (2) it "failed to interrogate the jury to make the required determination that [he] actually possessed a firearm during the course of committing the alleged offenses." (*Id.*, p. 39.)

The state court denied this claim:

> The Defendant alleges that the verdict form was defective because it can't be determined if his conviction was based on felony murder or premeditated murder. A special verdict form is not required demonstrating which theory the jury based its verdict on. *See Bedford v. State*, 589 So. 2d 245 (Fla. 1991). The Court finds no legal reason to conclude that counsel's performance was deficient in not requesting a special verdict form for the jury to determine if the Defendant actually discharged a firearm or to insist that the jury verdict form use the words "guilty as charged" in the indictment. The Court finds no basis to conclude that counsel's performance fell below an objective standard of reasonableness with respect to [this ground] of the Defendant's Motion.

(*Id.*, p. 83.)

The state court reasonably rejected this ineffective-assistance claim. First, counsel was not deficient for failing to request a special verdict form requiring the jury to indicate whether Mercedes-Castro was guilty of first-degree felony murder or premeditated first-degree murder.[3] The indictment charged Mercedes-Castro with first-degree murder under both theories, alleging that he "unlawfully did kill a human being" "from a premeditated design to effect the death of a human being, or while engaged in the commission or attempt to commit a robbery or burglary." (*Id.*, Ex. 1, p. 60.) Likewise, the trial court instructed the jury on both "First Degree Premeditated

---

[3] Under Florida law, "[t]here are two ways in which a person may be convicted of first degree murder. One is known as premeditated murder and the other is known as felony murder." *Prudent v. State*, 974 So. 2d 1142, 1143 (Fla. 3d DCA 2008).

Murder" and "First Degree Felony Murder." (*Id.*, pp. 151-52.) The verdict form did not, however, require the jury to distinguish between these two theories. Instead, it simply asked the jury to determine whether Mercedes-Castro was "guilty of First Degree Murder." (*Id.*, Ex. 1a, p. 172.)

Counsel had no basis to object to this portion of the verdict form. Under Florida law, "a special verdict to determine whether a defendant's first-degree murder conviction is based upon premeditated or felony murder is not required." *Haliburton v. State*, 561 So. 2d 248, 250 (Fla. 1990). The same is true of federal law. *See Harrison v. Inch*, No. 3:18-cv-2100-RV-CAS, 2019 WL 2077858, at *7 (N.D. Fla. Apr. 4, 2019) ("[T]he U.S. Supreme Court has held that the U.S. Constitution does not require separate verdict forms for alternative theories of premeditated and felony murder." (citing *Schad v. Arizona*, 501 U.S. 624, 645 (1991))), *adopted by* 2019 WL 2076399 (N.D. Fla. May 10, 2019); *Vilme v. McNeil*, No. 08-23138-CIV, 2010 WL 430762, at *29 (S.D. Fla. Feb. 5, 2010) ("The contention that a general guilty verdict that fails to differentiate between premeditated and felony murder is constitutionally inadequate has been rejected as meritless by the [United States] Supreme Court."). Because the proposed objection is meritless, counsel was not ineffective for failing to raise it at trial. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) ("[C]ounsel was not ineffective for failing to raise a nonmeritorious issue.").

Second, counsel was not deficient for failing to object that the verdict form did not "reference the charging document by stating that [Mercedes-Castro] was 'guilty as charged.'" (Doc. 18-2, Ex. 13, p. 39.) Contrary to Mercedes-Castro's assertion, the

verdict form did cite the "charging document." Specifically, each page of the form contained the following introductory language: "We, the jury, find as follows, as to Count One[, Two, or Three] *of the Indictment*." (*Id.*, Ex. 1a, pp. 172-74 (emphasis added).) Moreover, Mercedes-Castro cites no authority—and this Court is aware of none—requiring a verdict form to contain the words "guilty as charged." Accordingly, counsel was not ineffective for failing to raise this meritless objection.

Third, counsel did not provide ineffective assistance by failing to ensure that the jury determined whether Mercedes-Castro "actually possessed a firearm during the course of committing the alleged offenses." (*Id.*, Ex. 13, p. 39.) For the armed burglary and attempted armed robbery counts, the verdict form did ask the jury to determine whether Mercedes-Castro personally possessed or used a firearm during the commission of the offenses. (*Id.*, Ex. 1a, pp. 173-74.) With respect to the first-degree murder count, the verdict form did not require the jury to determine whether Mercedes-Castro possessed or used a firearm in committing the offense. (*Id.*, p. 172.) But no such interrogatory was required, because "[c]arrying [or using] a weapon in the course of committing the crime [is] not an essential element of first-degree murder." *Downs v. State*, 977 So. 2d 572, 574 (Fla. 2007). Thus, counsel was not ineffective for failing to raise this meritless issue.

For all of these reasons, Ground One, Sub-Claim A is denied.

## B.    Ground One, Sub-Claim B

Mercedes-Castro argues that trial counsel was ineffective for failing to request that the jury be instructed "solely . . . on the felony murder theory." (Doc. 9, p. 5.)

After the state rested, counsel moved for judgment of acquittal on all counts. Although the court denied the motion, it indicated that it "tend[ed] to agree that there's not evidence of premeditation. [But] [t]here's evidence of felony murder rule." (Doc. 18-2, Ex. 1d, p. 640.) Counsel then stated that she "would request the [first-degree murder] instructions be read in [their] entirety." (*Id.*) The court agreed, reasoning that "the instructions make more sense if we read them as they are." (*Id.*, p. 642.) As noted above, the court ultimately instructed the jury on both first-degree felony murder and premeditated first-degree murder. Mercedes-Castro argues that counsel rendered ineffective assistance by asking the court to instruct the jury on both theories of first-degree murder.

Respondent contends that this claim is procedurally defaulted because Mercedes-Castro failed to exhaust it in state court. The Court need not decide this issue because, even assuming the claim was exhausted, it would fail on the merits. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

Mercedes-Castro cannot show that he was prejudiced by the inclusion of the instructions on premeditated murder. To establish prejudice, Mercedes-Castro "has to demonstrate that there is a reasonable probability that, but for the [challenged] instruction[s], the outcome of the trial would have been different." *Torres v. Sec'y, Dep't of Corr.*, 843 F. App'x 203, 212 (11th Cir. 2021). This he cannot do. Where "a trial court instruct[s] a jury on two different legal theories, one supported by the evidence, the other not," the jury is "likely to disregard an option simply unsupported by

14

evidence." *Sochor v. Florida*, 504 U.S. 527, 538 (1992); *see also Turbi v. Sec'y, Dep't of Corr.*, No. 8:18-cv-40-VMC-CPT, 2018 WL 3772090, at *6 (M.D. Fla. Aug. 9, 2018) ("[Petitioner] has not established prejudice as a result of counsel's failure to object to the stealthy entry instruction. As the state court's order indicates, a jury will likely discount an inapplicable instruction."), *aff'd*, 800 F. App'x 773 (11th Cir. 2020).

Here, even assuming that the premeditated-murder instruction was unsupported by the facts, the prosecution presented ample evidence of first-degree felony murder. "First-degree murder includes the unlawful killing of a person when committed by someone engaged either in the perpetration of, or in the attempt to perpetrate, a robbery [or a burglary]." *Rocker v. State*, 122 So. 3d 898, 902 (Fla. 2d DCA 2013). Ponce, the wife of one of the suspects, testified that she overheard Mercedes-Castro and the other suspects discussing a plan to rob a drug dealer in Poinciana. Tejeda testified that he drove Mercedes-Castro and the other suspects to the house they planned to rob. When they arrived, Mercedes-Castro was one of the men who got out of the car. He and the other suspects came running back to the vehicle after Tejeda heard two or three gunshots. Moreover, Ponce testified that Mercedes-Castro told her he had "shot at [the victim]" and run off. (Doc. 18-2, Ex. 1d, p. 540.)

Based on this evidence, a reasonable jury could find beyond a reasonable doubt that Mercedes-Castro "caused [the victim's] death during the commission of" an attempted robbery. *Sexton v. State*, 221 So. 3d 547, 559 (Fla. 2017). Accordingly, the evidence was sufficient to support a conviction for first-degree felony murder. As a result, there is no "reasonable probability" that, had counsel persuaded the court to

exclude the instruction on premeditated murder, "the outcome of the trial would have been different." *Torres*, 843 F. App'x at 212; *see also Binder v. Pancack*, No. CIVA 06-59 KSF, 2007 WL 549929, at *12 (E.D. Ky. Feb. 16, 2007) ("[I]t is clear that the failure of petitioner's counsel to object to a factually unsupported theory of guilt contained in the jury instructions does not warrant habeas relief."). Thus, Ground One, Sub-Claim B is denied.

### C.    Ground Two

Mercedes-Castro contends that trial counsel provided ineffective assistance by "misadvising [him] to waive his right to a 12 person jury." (Doc. 9, p. 7.) As a result of this alleged advice, Mercedes-Castro "went with a six person jury." (*Id.*) According to Mercedes-Castro, counsel "failed to reasonably explain the functioning of a twelve person jury to the extent necessary to permit [him] to make an informed decision on whether to waive his rights to a twelve person jury." (*Id.*) Mercedes-Castro elaborated on this claim in his Rule 3.850 motion, asserting that (1) "counsel made an unreasonable decision by suggesting that [he] should waive his statutory right to a twelve-person jury in order to shorten the jury selection process," and (2) counsel caused him to "unknowingly and unintelligently waive his right to a twelve-person jury, where she failed to inform [him] that he had a statutory right to a twelve-person jury." (Doc. 18-2, Ex. 13, p. 64.) Mercedes-Castro also claimed that "scholarship and

data" suggest that the "function and purposes of a jury cannot constitutionally be fulfilled by a jury of six."[4] (*Id.*, p. 65.)

The state court denied this claim, reasoning that the trial transcript "show[ed] that [Mercedes-Castro] knowingly and willingly waived the right to have a twelve person jury." (*Id.*, pp. 122-23.) The court cited the following portion of the transcript:

> [TRIAL COUNSEL]: We will go with a jury of six. My client is agreeable with that.
>
> THE COURT: Raise your right hand. Do you solemnly swear or affirm the testimony you are about to give will be the truth?
>
> MR. CASTRO: Yes, sir.
>
> THE COURT: State your name for the record.
>
> MR. CASTRO: Hansel Mercedes-Castro.
>
> THE COURT: You can put your hand down. I'm not sure she can hear you. You are soft spoken so make sure you speak loudly. You've had an opportunity to discuss this issue with Ms. Williamson, your attorney?
>
> MR. CASTRO: Yes sir.
>
> THE COURT: And you're satisfied with the advice she's given you?
>
> MR. CASTRO: Yes, sir.
>
> THE COURT: It's your decision—you personally made the call that you are willing to go with six?
>
> MR. CASTRO: Yes, sir.

---

[4] It is well established that a "12-member jury [is] not required by the Constitution." *United States v. Walsh*, 75 F.3d 1, 6 (1st Cir. 1996); *see also Edgemon v. Lockhart*, 768 F.2d 252, 256 (8th Cir. 1985) ("States are not required by the federal Constitution to try criminal cases to juries of twelve people . . . .").

THE COURT: You understand that in a capital case, you are entitled to a jury of twelve?

MR. CASTRO: Yes, sir.

THE COURT: And like any other rights you have, you can waive that right?

MR. CASTRO: Yes, sir.

THE COURT: And you're willing to waive that right and go with six?

MR. CASTRO: Yes, sir.

(*Id.*, Ex. 1b, pp. 221-22.)

The state court reasonably rejected this ineffective-assistance claim.[5] Even assuming that counsel performed deficiently, Mercedes-Castro cannot establish that he was prejudiced by counsel's conduct. To demonstrate prejudice, Mercedes-Castro must show "a reasonable probability that an acquittal or hung jury would have resulted had [his] counsel insisted on twelve jurors." *Cabberiza v. Moore*, 217 F.3d 1329, 1334 (11th Cir. 2000). Mercedes-Castro has not made the required showing. Indeed, "[t]he Supreme Court itself has said that 'neither currently available evidence nor theory suggests that the 12-man jury is necessarily more advantageous to the defendant than a jury composed of fewer members.'" *Id.* at 1335 (quoting *Williams v. Florida*, 399 U.S. 78, 101-02 (1970)). Accordingly, Mercedes-Castro's "claim of prejudice is entirely speculative because he relies entirely on the mere possibility at least one of the six additional jurors would have voted to acquit him." *Joseph v. Sec'y, Fla. Dep't of Corr.*,

---

[5] The Court need not address Respondent's exhaustion argument because, even if unexhausted, Ground Two fails on the merits.

No. 3:15-cv-1363-MMH-JRK, 2018 WL 5024180, at *14 (M.D. Fla. Oct. 17, 2018); *see also Jimenez-Solano v. Sec'y, Fla. Dep't of Corrs.*, No. 16-10073-CIV, 2018 WL 9801185, at *7-8 (S.D. Fla. Mar. 12, 2018) ("[T]he record is devoid of evidence that an acquittal or hung jury would have resulted had defense counsel insisted on twelve jurors. . . . Thus, there is a reasonable argument that petitioner cannot show prejudice under *Strickland*."), *adopted by* 2018 WL 9801134 (S.D. Fla. Aug. 30, 2018).

Because there is no basis to conclude that Mercedes-Castro suffered prejudice, the state court correctly rejected his ineffective-assistance claim.[6] Ground Two is denied.

### D.   Ground Three

Mercedes-Castro contends that trial counsel was ineffective for "failing to impeach" Ponce, the wife of one of the suspects. (Doc. 9, p. 8.) He contends that, during a "termination of parental rights" hearing, Ponce claimed she "knew nothing about the murder of" the victim. (*Id.*) At her deposition and at trial, however, Ponce testified that "she heard the planning of the of the alleged attempted robbery." (*Id.*) Mercedes-Castro claims that counsel should have impeached Ponce based on these inconsistent statements.

The state court denied this claim:

> In his Amended Supplement, the Defendant alleges that Janice Ponce was asked during a termination of parental rights proceeding whether she knew anything about the murder of [the victim] and she responded, "No." However, in a deposition Ms. Ponce claimed that she overheard the planning of the alleged attempted robbery between her husband, Mr.

---

[6] The Court would reach the same conclusion even if *de novo* review applied to this claim.

Cruz, and the Defendant. He alleges that "she further claimed to have seen the Defendant with two AK-47 rifles, and that Defendant admitted to her that he entered the home of the deceased and that the deceased fired a shot at him, and he shot back and fatally wounded [the victim]. Moreover, at trial, Janice Ponce testified that she had 'lied' at the 'Termination Parental Rights Trial' when she was asked if she knew anything about the murder for which her husband was arrested because it suited her to 'lie'."

The Defendant alleges that his counsel's failure to properly impeach Mrs. Ponce based on the difference between the statements she made at the termination of parental rights proceeding and in her deposition may have allowed the jury to place greater weight on the in court testimony which was prejudicial to the Defendant. He alleges her in court testimony directly conflicts with her testimony at the parental rights proceeding. The Defendant's claim that his attorney did not properly impeach Mrs. Ponce is conclusory. A review of the appellate record does not support the Defendant's argument. Defense counsel brought to the attention of the jury that Mrs. Ponce had testified that she did not know anything about the murder when she gave testimony at the termination of Parental Rights proceeding. When counsel questioned Mrs. Ponce, Mrs. Ponce acknowledged that it suited her to lie at the termination of parental rights proceeding. The Court finds that defense counsel's performance with regard to [this ground] of the Defendant's Motion did not fall below an objective standard of reasonableness.

(Doc. 18-2, Ex. 13, p. 119 (record citations omitted).)

The state court reasonably rejected this ineffective-assistance claim. As the state court explained, counsel did impeach Ponce with the testimony she gave at the family-court proceeding:

Q. Did you appear in court in Osceola County on February 26, 2007?

A. For what?

Q. For a child custody issue?

A. Yes.

Q. Okay. Were you asked in court about this murder?

20

A. Yes.

Q. And did you deny that you knew anything?

A. Yes, because it was not concerned to do with none of what I was in court for [*sic*].

. . .

Q. But you were asked by the Department of Children and Family lawyer, "do you know anything about the murder that he is currently arrested on?" And your answer was, "no."

A. Yes.

. . .

Q. Okay. So you lied in court?

A. Yes.

Q. Because you didn't think it was important that anybody know the truth?

A. Yes.

Q. And it suited you to lie?

A. Yes.

(*Id.*, Ex. 1a, pp. 575-77.)

Because counsel impeached Ponce with the inconsistent statements identified by Mercedes-Castro, there is no basis to find either deficient performance or prejudice. *See Mitchell v. Sec'y, Dep't of Corr.*, No. 8:20-cv-1214-CEH-MRM, 2023 WL 3596406, at *8 (M.D. Fla. May 23, 2023) (rejecting ineffective-assistance claim because, "[a]s the state court correctly recounted, trial counsel impeached Boehm with the prior

21

inconsistent statements [petitioner] identifies"); *Wright v. Sec'y, Dep't of Corr.*, No. 8:10-cv-770-VMC-TGW, 2011 WL 2731079, at *12 (M.D. Fla. July 13, 2011) ("[Petitioner] alleges that defense counsel was ineffective for failing to impeach Ms. Smith. This allegation is [] refuted by the record, as defense counsel did impeach Ms. Smith on cross-examination."). Ground Three is denied.

### E.    Ground Four

Mercedes-Castro contends that trial counsel was ineffective for failing to call three witnesses at trial: Detective Dustin Kendrick, April Grindrod, and Jean Mercedes-Castro (his brother). Detective Kendrick allegedly would have testified that "there was no direct evidence of an intent to take money or other property from the victim." (Doc. 9, p. 10.) Grindrod, the girlfriend of the victim, allegedly "would have given testimony that was inconsistent with the State's theory as to the events that occurred." (Doc. 18-2, Ex. 13, p. 70.) Finally, Jean Mercedes-Castro allegedly would have served as another alibi witness.

Following an evidentiary hearing, the state court denied this claim. The court first addressed counsel's failure to call Grindrod:

> The Defendant alleges that the State's [k]ey witness, Jose Tejeda, testified that he drove the alleged co-defendants within several blocks of the alleged crime and waited in the car for the men to return. He alleged that when they returned they came running back. The Defendant alleges that Ms. Grindrod would have given testimony inconsistent with Mr. Tejeda's testimony and inconsistent with the State's version of events. The Defendant alleges that Ms. Grindrod would have offered an alternative motive for the murder and her testimony could have pointed to a different possible murderer.

22

The Defendant alleges that [Grindrod] had knowledge of a strained relationship between the vict[i]m and Barbara Valentin[, the victim's spouse, from whom he was separated,] and that there was some suspicion that Barbara Valentin might have something to do with the murder. The Defendant alleges that information about a possible connection between Ms. Valentin and the owner of the gun that killed the victim would have been of interest to the jury.

Ms. Grindrod testified at the evidentiary hearing that she was in bed with the victim when she heard the sound of breaking glass and two gunshots. She felt the victim get out of bed. She heard a grunt outside the window and thought the grunt might be from a black male. She heard a car door slam and a car pull away. She thought it might be the victim getting into his Ford Expedition to go after the perpetrator. Ms. Grindrod testified that at the time, the victim[] was separated from his wife, Barbara Valentin. She testified that the victim had just returned from New York. The day before the shooting the victim told her that Barbara Valentin would be stopping by with her mother and sister, and later that day told her that Barbara Valentin had stopped by. She testified that she had been told by the victim to leave the residence so she would not be there when they came because it would just cause problems. Ms. Grindrod testified that someone had told her that Barbara Valentin had previously stabbed the victim. She testified that nothing was taken from the residence that night by the perpetrator and she never saw anybody in the house other than herself and the victim.

To a certain extent Ms. Grindrod's testimony points at Barbara Valentin as possibly having some connection to the murder. However, the Court notes that Ms. Grindrod testified at the evidentiary hearing that she did not think Ms. Valentin had any connection to the victim's murder at the time of the homicide and that was still her opinion at this time. To a certain extent, Ms. Grindrod's testimony contradicts the testimony of Mr. Tejeda at trial regarding where the vehicle of the perpetrators stopped in relationship to the residence. The Court does not find that the Defendant has shown that counsel's performance fell below an objective standard of reasonableness with regard to the Defendant's claims . . . . However, to the extent it could be argued that counsel was deficient in this regard, the Court sees no reasonable probability that the result of the proceeding would have been different but for counsel's deficiency given the strength of the State's case against the Defendant.

(*Id.*, pp. 415-16 (record citations omitted).)

The state court reasonably concluded that counsel was not ineffective for failing to call Grindrod at trial. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). To establish prejudice, Mercedes-Castro must show "a reasonable probability that, but for counsel's [failure to call Grindrod as a witness], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The burden of establishing prejudice "is heavy where the petitioner alleges ineffective assistance in failing to call a witness." *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006). Nevertheless, the failure to call an exculpatory witness is "more likely prejudicial when a conviction is based on little record evidence of guilt." *Fortenberry v. Haley*, 297 F.3d 1213, 1228 (11th Cir. 2002).

Mercedes-Castro cannot show that he was prejudiced by the failure to call Grindrod. Before the state court, Mercedes-Castro argued that Grindrod's testimony would have cast doubt on his responsibility for the murder by pointing to the victim's estranged wife as a potential suspect. As the state court explained, however, Grindrod herself testified that she did not believe the victim's wife was involved in the murder. Notably, Grindrod also stated at the evidentiary hearing that, although she was present during the attempted robbery, she "kept [her] eyes closed the whole time." (Doc. 18-2, Ex. 13, p. 281.) Thus, any testimony she might have offered about the incident would have been of limited value. For that reason, and in light of the overwhelming evidence of Mercedes-Castro's guilt, there is no reasonable probability that, had Grindrod testified at trial, the outcome would have been different. *See United States v.*

24

*Andrews*, 953 F.2d 1312, 1327 (11th Cir. 1992) (rejecting ineffective-assistance claim based on failure to call exculpatory witnesses because, "even had the witnesses' testimony been presented to the jury, the verdict would have remained the same").

The state court also concluded that counsel was not ineffective for failing to call Jean Mercedes-Castro as an alibi witness:

> In the Defendant's "Amended Supplement to Motion To Vacate, Set Aside, Or Correct Sentence, And Request For An Evidentiary Hearing," filed on November 22, 2010, the Defendant says his brother, Jean Mercedes-Castro[,] would have testified at trial that the Defendant was with him on the night of the alleged crime, and it would have been impossible for the Defendant to have been in two places at the same time.
>
> Jean Mercedes-Castro testified at the evidentiary hearing by telephone from a Federal Correctional Institution in Fort Worth, Texas. He testified that his incarceration has nothing to do with the Defendant's case. Mr. Castro testified that he realized in August 2006 that his brother was with him at the time the murder occurred. He said this information was conveyed to his brother's attorney Julia Williamson in September or October 2006. He testified that he was with the Defendant in a FEMA trailer all night when this murder occurred. He agreed that from what he heard, his testimony would have corroborated the testimony of three other witnesses. He testified that he and a Mr. Principe brought three girls back to the trailer on the Monday night after Thanksgiving. He testified that the Defendant and another of his friends were at the trailer and later that night his mother also showed up. He testified that the guys and the girls spent the whole night listening to music, drinking, and having fun. He testified that he didn't sleep that night and his brother did not leave his sight. Mr. Castro testified that during his brother's trial Ms. Williamson wanted him stay in the [c]ourtroom and offer moral support to his brother rather than be a witness. He said that Ms. Williamson said they already had three witnesses and maybe his testimony would not add as much value to the defense. Mr. Castro testified that he was not present for the whole trial because the Court kicked him out of the courtroom for looking at and intimidating the victim's ex-wife.
>
> At the Defendant's trial Joseph Principe, Miguel Orengo, and the Defendant's mother testified that the Defendant was with them at the trailer on the night of the homicide. According to their testimony at the

trial, these witnesses waited until November 2007 to come forward with their information regarding an alibi for the Defendant. The Defendant had been arrested in July 2006. Jean Mercedes-Castro's testimony differed from their testimony to the extent he claims he informed Ms. Williamson about the alibi in September or October 2006. Otherwise, Jean Mercedes Castro's testimony about his brother's whereabouts on the night of the murder is similar to the three witnesses that were called in respect to the alibi. The jury in the trial obviously did not find the testimony of these three witnesses to be credible from the standpoint of providing an alibi for the Defendant. Similarly, the Court does not find [] Jean Mercedes-Castro['s] testimony regarding the whereabouts of his brother on the night of the murder to be credible. The Court also does not find it credible that Jean Mercedes-Castro gave alibi information to trial counsel in September or October 2006. The defense counsel has the ultimate authority as to whether to have a witness testify at trial. *See Puglisi v. State*, 112 So. 3d 1196 (Fla. 2013). The Defendant's counsel chose to have Mr. Principe, Mr. Orengo, and the Defendant's mother provide information as to an alibi. The Court does not find that Counsel's performance fell below an objective standard of reasonableness in not calling the Defendant's brother as an alibi witness.

(Doc. 18-2, Ex. 13, pp. 416-17.)

The state court reasonably rejected the ineffective-assistance claim based on the failure to call Mercedes-Castro's brother as an alibi witness. "A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002). "[E]vidence presented in postconviction proceedings is 'cumulative' or 'largely cumulative' to or 'duplicative' of that presented at trial when it tells a more detailed version of the same story told at trial or provides more or better examples or amplifies the themes presented to the jury." *Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 660 (11th Cir. 2014) (quoting *Holsey v. Warden*, 694 F.3d 1230, 1260-61 (11th Cir. 2012)).

26

As the state court correctly found, Jean Mercedes-Castro's testimony would have been cumulative of the testimony given by the three other alibi witnesses at trial. Indeed, all four individuals claimed that Mercedes-Castro was home on the night of the murder. In addition, the state court concluded that Jean Mercedes-Castro's testimony was not credible. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). Mercedes-Castro has not shown by "clear and convincing evidence" that the state court's credibility determination was erroneous. 28 U.S.C. § 2254(e)(1). Accordingly, because "the testimony would have been cumulative and the jury could have viewed the testimony as incredible," Mercedes-Castro "failed to show that counsel's decision not to call his brother as a witness was unreasonable or that the result of his trial would have been different if his brother had testified." *Walker v. Sec'y, Fla. Dep't of Corr.*, 495 F. App'x 13, 17 (11th Cir. 2012).

Finally, the state court rejected Mercedes-Castro's claim that counsel was ineffective for failing to call Detective Kendrick at trial:

> The Defendant alleged that his counsel was ineffective for not investigating, deposing, and calling Detective Dustin Kendrick as a witness. The Defendant alleged that Detective Kendrick would have been available to testify. The Defendant alleged that Detective Kendrick would have testified that there was no sign of forcible entry or direct evidence that someone tried to enter or remain in the victim's residence with an intent commit an offense therein. The Defendant also indicates Detective Kendrick's testimony would have shown there was no direct evidence of an intent to take money or other property from the victim. The Defendant alleges that Detective Kendrick's testimony would have

27

provided evidence that no first-degree felony murder, armed burglary[,] or attempted robbery occurred.

Detective Kendrick was not called as a witness at the evidentiary hearing. Counsel for the Defendant indicated to the Court that she was going to file an affidavit she had seen which had been executed by Detective Kendrick attesting that there were no signs of forced entry at the residence. In her written closing argument, counsel for the Defendant advised the Court that she was unable to locate any such affidavit or sworn report authored by Detective Kendrick. The Defendant has failed to provide any evidence in support of [this ground] of his Motion, and the Court is unable to tell if Detective Kendrick would have provided any relevant information with regard to [this claim].

(Doc. 18-2, Ex. 13, p. 417.)

The state court reasonably rejected this ineffective-assistance claim. "[A] petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) (collecting cases); *see also United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980) (affirming denial of ineffective-assistance claim because "[n]one of the alleged witnesses were called at the § 2255 hearing and no one knows what they would have testified to"). Here, Mercedes-Castro presented no evidence beyond his "own assertions" that Detective Kendrick would have testified in the manner he suggested. *McKiver*, 991 F.3d at 1365. Accordingly, the state court reasonably found that Mercedes-Castro not prejudiced by the failure to call Detective Kendrick as a witness. *See id.* at 1366 ("The only evidence before the state appellate court was [petitioner's] own conclusory testimony about what the witnesses would have said and whether they would have been available and willing to testify. This testimony is precisely the kind

of evidence that we—and other courts—have held to be simply inadequate to undermine confidence in the outcome of the proceeding.").

For all of these reasons, Ground Four is denied.

## F.     Ground Five

Mercedes-Castro contends that trial counsel was ineffective for failing to object to several instances of alleged "prosecutorial misconduct" at trial. (Doc. 9, p. 11.) The prosecution allegedly engaged in misconduct by (1) "comment[ing] on [Mercedes-Castro's] right to remain silent" and "attempt[ing] to shift" the burden of proof to him; (2) "stat[ing] to the jury that that there was no issue that there was a burglary and that there was no issue with respect to the manner of [] death of [the victim]"; (3) vouching for "the credibility of Jose Tejeda"; and (4) suggesting that Mercedes-Castro's alibi witnesses were "lying." (Doc. 18-2, Ex. 13, pp. 51-56.)

The state court denied this claim:

> Although [this ground] was one of the claims that was part of the evidentiary hearing, this claim was not pursued to any extent at the evidentiary hearing. The Defendant alleges in his Motion that his counsel provided ineffective assistance in not objecting to testimony from Lisa Rousseau that the Defendant said he did not want his interview tape recorded. The Defendant also alleges that counsel was ineffective in not objecting to [] Rousseau's testimony that the Defendant never said that he was not at the scene where [the victim] was killed. The Defendant claims that the prosecutor was violating his right to remain silent, and he claims that the State was shifting the burden of proof. The Court does not find that counsel's performance fell below an objective standard of reasonable[ness] in not objecting to these comments. However, to the extent it could be argued that counsel was deficient in this regard, the Court sees no reasonable probability that the result of the proceeding would have been different but for counsel's deficiency.

The Defendant claims in his Motion that the prosecutor engaged in misconduct when he advised the jury that there was no issue that there was a burglary and no issue with respect to the manner of death of [the victim]. The Court finds that this argument has no legal merit. The Defendant alleges the prosecutor engaged in misconduct by vouching for the credibility of Jose Tejeda. A review [of] the prosecutor's comments regarding the relative culpability of Mr. Tejeda does not demonstrate improper bolstering of a witness. The Defendant claims that when the prosecutor argued that the statements of his alibi witnesses were not reasonable[,] he was improperly vouching for his own witnesses and invading the province of the jury. The Court finds no legal merit in this argument.

For the most part the Defendant's argument of prosecutorial misconduct seems to be based on fair comment by the State on the evidence presented at trial. The Court does not find that counsel's performance fell below an objective standard of reasonableness with regard to the claims made by the Defendant in [this ground] of []his Motion. Additionally, to the extent it could be argued that counsel was deficient in not objecting to some of the comments of the prosecution, the Court finds no reasonable probability that the result of the proceedings would have been different but for counsel's deficiency. The State presented compelling evidence of the Defendant's involvement in the crimes that he was charged with. The testimony of Jose Tejeda and Janice Ponce were particularly significant in tying the Defendant to the crimes he was convicted of.

(*Id.*, pp. 413-14 (record citations omitted).)

The state court reasonably rejected this ineffective-assistance claim.[7] First, counsel was not ineffective for failing to object to Rousseau's testimony that Mercedes-Castro did not want his conversation with law enforcement to be tape recorded. Before the state court, Mercedes-Castro argued that this testimony amounted to a "comment[] on [his] right to remain silent." (*Id.*, p. 31.) The Supreme Court has never addressed whether "a defendant's refusal to allow his statements to police to be memorialized

---

[7] The Court need not address Respondent's exhaustion argument because, even if unexhausted, Ground Five fails on the merits.

may be commented upon by the state at trial." *Wilson v. Sec'y, DOC*, No. 2:12-cv-265-SPC-CM, 2014 WL 7251671, at *8 (M.D. Fla. Dec. 19, 2014). Moreover, "[t]he courts that have addressed similar 'failure to memorialize' issues are divided." *Id.* (collecting cases). Because the law on this issue was "unsettled" at the time of trial, counsel was not ineffective for failing to object. *Jones v. United States*, 224 F.3d 1251, 1258 (11th Cir. 2000); *see also Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) ("[A]s an acknowledgment that law is no exact science, the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized."); *Broomfield v. United States*, No. 3:14-cr-156-TJC-PDB, 2020 WL 4582725, at *5 (M.D. Fla. Aug. 10, 2020) ("Where the law is at best unsettled, as it was here, counsel does not perform deficiently by failing to raise an argument that was not clearly supported by established law.").

Second, counsel was not ineffective for failing to object to Rousseau's testimony that, during his interview with law enforcement, Mercedes-Castro never denied that he was "at the scene where [the] victim was killed." (Doc. 18-2, Ex. 1c, p. 366.) Mercedes-Castro contends that this testimony violated his "right to remain silent" and shifted the burden of proof to him. (Doc. 9, p. 11.) Although counsel did not object to Rousseau's testimony while she was on the stand, counsel did raise an objection when the prosecutor cited her testimony in closing argument. Specifically, the prosecutor stated: "I asked Rousseau, Lisa Rousseau, did he ever tell you that he wasn't there? No. Never said that. That is so fundamental to that conversation." (Doc. 18-2, Ex. 1e, p. 782.) Counsel immediately objected:

> [TRIAL COUNSEL]: Your Honor, I object to the State's going into this fundamental issue on the right to silence by my client. And in the police report, my client did deny it. I did not cross-examine the officer about that because I didn't want to open the door to the further comments that were made. But my client did deny it, and it was in the police report that he denied it. Then when they went back in and questioned him more, there were other things said, so I don't cross her or object to that issue. But the State is misrepresenting facts and then he's making a big deal out of his right to silence and fundamental issues. I think it's inappropriate.

(*Id.*, p. 783.) The court overruled the objection but cautioned the prosecutor to "be careful using the term 'fundamental' much more as related to [Mercedes-Castro's] statements, and kind of move on." (*Id.*, p. 784.)

Mercedes-Castro cannot show that counsel's conduct—refraining from objecting while Rousseau was on the stand but raising an objection when the testimony was cited in closing argument—fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Had counsel objected during the examination, she might have drawn attention to Mercedes-Castro's failure to deny his presence at the scene of the crime. *See Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014) ("[T]here are many reasons why defense counsel might not object to [] a statement, including [that] the objection may draw attention to the statement."); *Sharpe v. Jones*, No. 4:14-cv-550-RH-CAS, 2017 WL 1856284, at *10 (N.D. Fla. Mar. 8, 2017) ("Attorneys sometimes decline to raise valid objections in order to avoid drawing the jury's attention to an objectionable comment which the jury might otherwise have regarded as unimportant."), *adopted by* 2017 WL 1855755 (N.D. Fla. May 4, 2017). Accordingly, the Court cannot say that "no competent

counsel would have taken the action that [Mercedes-Castro's] counsel did take."
*Zakrzewski v. McDonough*, 455 F.3d 1254, 1258 (11th Cir. 2006).[8]

Third, counsel did not provide ineffective assistance by failing to object to the
prosecutor's statements during closing argument that (1) "[t]here's no issue that [the
victim] died as a result of a gunshot wound to the head," and (2) "[t]here's no issue
that it was a burglary." (Doc. 18-2, Ex. 1e, p. 770.) During closing argument, "[a]
prosecutor is not limited to a bare recitation of the facts, but instead, may comment on
the evidence and express the conclusions he contends the jury should draw from the
evidence." *Crenshaw v. Sec'y, Fla. Dep't of Corr.*, No. 16-17735-D, 2017 WL 6761058, at
*6 (11th Cir. Oct. 18, 2017) (citing *United States v. Johns*, 734 F.2d 657, 663 (11th Cir.
1984)). Thus, "[a] prosecutor may comment on the uncontradicted or uncontroverted
nature of the evidence . . . during closing argument to the jury." *Braddy v. Inch*, No.
4:17-cv-478-RH-EMT, 2019 WL 8510071, at *11 (N.D. Fla. Apr. 11, 2019), *adopted by*
2020 WL 550260 (N.D. Fla. Feb. 4, 2020). Because the challenged remarks were fair
comments on the evidence presented at trial, counsel was not ineffective for failing to
object.

---

[8] Furthermore, even if the challenged remarks did shift the burden of proof to Mercedes-Castro, he
still would not be entitled to relief. Following closing arguments, the court instructed the jury that (1)
the prosecution had "the burden of proving [that] the crime with which [Mercedes-Castro was]
charged was committed and [that Mercedes-Castro was] the person who committed the crime"; and
(2) Mercedes-Castro "was not required to present evidence or prove anything." (Doc. 18-2, Ex. 1e, p.
844.) The Eleventh Circuit has made clear that any "prejudice from the comments of a prosecutor
which may result in a shifting of the burden of proof can be cured by a court's instruction regarding
the burden of proof." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992).

Fourth, counsel did not perform deficiently by failing to argue that the prosecutor improperly vouched for the credibility of Jose Tejeda during closing argument. The prosecutor sought to explain to the jury why Tejeda—the man who drove the suspects to the robbery—was not prosecuted for felony murder:

> A decision has to be made about responsibility for the death of [the victim] and those individuals most responsible being held accountable. Having the benefit of Mr. Tejeda's testimony and the information that he has, and hav[ing] him available as a witness to the events leading up, immediately leading up to [the victim's] death, was absolutely critical. Mr. Tejeda told you that no promises were made to him. And none were. There's no evidence of that in this case. But the decision was made that it was more important for you to have the benefit of that testimony, rather than to treat someone with minimal involvement as a defendant and not have his testimony available for you. He told the police immediately, when he was contacted, what he did and what happened. And in order to properly seek justice in this case, Mr. Tejeda was treated as a witness to a great extent because everything that he said, everything that he said was corroborated by people that he did not even know.

(Doc. 18-2, Ex. 1e, pp. 790-91.)

The prosecution in this case did not engage in improper vouching. Vouching for a witness's credibility is improper when the prosecution "place[s] the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity," or when it indicates "that information not presented to the jury supports the testimony." *United States v. Sims*, 719 F.2d 375, 377 (11th Cir. 1983). Here, the prosecutor did not make "explicit personal assurances of [Tejeda's] veracity," nor did he suggest that "information not presented to the jury support[ed] the testimony." *Id.* Instead, the prosecutor argued that the jury should credit Tejeda's testimony based on "facts in evidence and reasonable inferences from those facts." *United States v. Gonzalez*,

834 F.3d 1206, 1226 (11th Cir. 2016). Because the prosecution did not improperly

vouch for Tejeda's credibility, counsel was not ineffective for failing to raise the issue.

Fifth, counsel did not perform deficiently by failing to object when the

prosecution suggested during closing argument that Mercedes-Castro's alibi witnesses

were untruthful. The prosecutor sought to undermine these witnesses' credibility by

emphasizing that they did not come forward until over a year after Mercedes-Castro's

arrest. (Doc. 18-2, Ex. 1e, p. 796.) The prosecutor then stated:

> I am not at this point prepared to tell you that they are intentionally lying,
> but what I will tell you is that they want that to be true so badly that there
> is an absolute distortion of when those events had taken place and the
> date that it had taken place.

> Six days before the trial, the anticipation, the agony, the worry that is
> taking place is what generated, generated, gave the genesis to this alibi.
> They could not keep straight who told who what. And what has
> happened is, is that they want those events to have occurred on that night,
> and they have convinced one another, at a minimum they have
> convinced one another, that that is a fact. That is what happened.

(*Id.*, p. 797.)

Counsel had no basis to object to these remarks because they were not improper.

"A prosecutor may argue during closing arguments that a witness is lying if the

evidence supports his remarks." *United States v. Schneider*, 853 F. App'x 463, 467 (11th

Cir. 2021) (citing *United States v. Schmitz,* 634 F.3d 1247, 1270 (11th Cir. 2011)). Here,

the prosecutor simply "urg[ed] the jury to conclude that [Mercedes-Castro's alibi] was

untrue based on a consideration of the relevant evidence"—most importantly, the

lengthy delay between Mercedes-Castro's arrest and the alibi witnesses' decision to

come forward. *United States v. Sosa*, 777 F.3d 1279, 1297 (11th Cir. 2015). Counsel was not ineffective for failing to raise this meritless issue.[9]

Even assuming that counsel was deficient for failing to object to each instance of alleged prosecutorial misconduct, the ineffective-assistance claim would still fail for lack of prejudice. As explained above, the prosecution presented overwhelming evidence of Mercedes-Castro's guilt. "Considering the overwhelming evidence of [Mercedes-Castro's] guilt, the state trial court's finding that [he] is unable to demonstrate prejudice as required by *Strickland* is neither an unreasonable application of, nor contrary to, federal law." *Atwater v. Crosby*, 451 F.3d 799, 811 (11th Cir. 2006) (citation omitted); *see also Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1300 n.9 (11th Cir. 2014) (noting that "[t]he overwhelming evidence of [petitioner's] guilt [] makes it obvious that [he] cannot show *Strickland* prejudice" from counsel's failure to object to allegedly improper testimony).

Accordingly, Ground Five is denied.

## G. Ground Six

Mercedes-Castro contends that trial counsel was ineffective for failing to properly litigate his motion to suppress the statements he gave to law enforcement. He faults counsel for entering a "stipulation agreement with the State" that excluded only

---

[9] In his Rule 3.850 motion, Mercedes-Castro also argued that counsel should have objected "during the State's opening statement," when "the prosecutor [allegedly] engaged in misconduct [by] bec[oming] an unsworn witness not subject to cross-examination." (Doc. 18-2, Ex. 13, p. 52.) The prosecutor did not make any improper remarks in his opening statement. Thus, counsel had no basis to object.

a portion of his statements to the police. (Doc. 9, p. 12.) According to Mercedes-Castro, counsel should have sought to exclude his entire statement on the grounds that he "unequivocally invoked his right to counsel" at the beginning of the interview, and thus his *Miranda*[10] rights were violated when the interrogation continued. (*Id.*)

The state court denied this claim following an evidentiary hearing:

The Defendant was arrested and interrogated by Detective Ivan Navarro and FDLE agent Lisa Akahaven (Lisa Rousseau at the time of trial) at the Osceola County Jail on July 15, 2006. The Defendant alleges that after he was advised of his *Miranda* rights, he invoked his rights, but the interrogation continued. Although there seems to be no copy of a Motion to Suppress Statements And Admissions in the Court file, it is clear that a hearing was held on such a motion on June [5], 2007. The Court reviewed a CD recording of that hearing. The Defendant's counsel sought suppression of statements or admissions ma[d]e by the Defendant on July 15, 2006, to Detective Navarro and Agent [Rousseau], while he was under arrest at the Osceola County Jail. An "Order Granting Defendant's Motion To Suppress" was filed on June 13, 2007. That Order indicates that at the hearing on June 5, 2007, counsel for the Defendant, Julia J. Williamson, Esq., and Assistant State Attorney, Robert J. Antonello, counsel for the State[,] stipulated on the record that portions of a police report authored by FDLE agent Lisa [Rousseau] would be offered into evidence as testimony of Agent [Rousseau] for purposes of the hearing, and portions of a police report authored by Detective Ivan Navarro would be offered into evidence as testimony of Detective Navarro for purposes of the hearing. Paragraphs 4 and 5 of the Order indicated what part of the statements referenced in the police reports should be suppressed:

4. [Rousseau's] report subsequent to, and including, the statement beginning at page 515, line 9 reading "CASTRO replied that before he would tell the Agents his side of the story he wanted to talk with an attorney" should be suppressed.

5. All statements of the Defendant referenced in Detective Navarro's report subsequent to, and including, the

---

[10] *Miranda v. Arizona*, 384 U.S. 436 (1966).

statement beginning at page 440, last sentence of the fourth full paragraph reading "Castro said since he wasn't getting out, it was not worth it to talk or say anything,["] should be suppressed.

The Defendant alleges that counsel entered into this stipulation with the State without informing him. He alleges counsel should have tried to suppress all of the alleged statements, admissions, and confessions contained in the police reports as inadmissible hearsay. The Defendant seems to be alleging that his due process rights were violated in not having a full hearing to suppress the statements he made in his interrogation.

At the evidentiary hearing, the Defendant testified that he asked for a lawyer from the beginning of his interrogation. At the evidentiary hearing on July 18, 2013, Detective Ivan Navarro[] testified that he read the Defendant his *Miranda* [r]ights prior to interviewing him, and the Defendant agreed to talk with them. He asked the Defendant if he wanted a recorded statement, and the Defendant refused. Detective Navarro was asked about some comments the Defendant made with regard to a[n] AK-47. Detective Navarro confirmed that the Defendant made a comment during his interview, "You have my prints on it." Detective Navarro also confirmed that [] the Defendant made another comment, "Check everyone's prints." Detective Navarro agreed that at some point after these comments, the Defendant asked for an attorney.

Lisa Rousseau testified at the Defendant's trial, but Detective Navarro did not testify at the trial. Ms. Rousseau's testimony at the trial also indicated that the Defendant had talked with them after being given his *Miranda* rights and did not indicate a desire to invoke any rights during the first part of the questioning.

Although[] the Defendant alleges that he tried to invoke his *Miranda* [r]ights from the beginning of the interrogation, the Court finds that the testimony of Detective Navarro at the [e]videntiary hearing, and the testimony of Ms. Rousseau from the trial, indicating that the Defendant invoked his rights later in the questioning, to be more credible. Should trial counsel have tried to have the Defendant's entire statement to the detectives be suppressed, the Court finds no reasonable possibility that she would have been successful. The stipulation agreement with the State appears to be a reasonable action on the part of counsel to limit some of the Defendant's statements from disclosure. The Court finds that the Defendant's claim that his attorney told him not to worry about the

stipulation because they would have a later hearing to get everything suppressed is not credible.

In his Motion, the Defendant also cites *Powell v. State*, 969 So. 2d 1060 (Fla. 2d DCA 2007), and he claims that the *Miranda* warning given to him was flawed because it did not adequately inform the Defendant of his constitutional right to have an attorney present throughout [the] interrogation. The Defendant did not pursue an argument or provide evidence with regard to his *Powell* claim at the evidentiary hearing. The Court notes that the decision of the Second District Court of Appeal was quashed and the case remanded by the Florida Supreme Court in *State v. Powell*, 66 So. 3d 905 (Fla. 2011).

The Court finds that counsel's performance did not fall below an objective standard of reasonableness with regard to the Defendant's claims. . . .

(Doc. 18-2, Ex. 13, pp. 411-13 (record citations omitted).)

The state court reasonably rejected this ineffective-assistance claim. Mercedes-Castro contends that counsel should have sought suppression of his entire statement on the grounds that the interview continued despite his request for an attorney at the beginning of the conversation. *Miranda* "condition[s] the admissibility at trial of any custodial confession on warning a suspect of his rights: failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained." *Missouri v. Seibert*, 542 U.S. 600, 608 (2004). By contrast, "giving the warnings and getting a waiver has generally produced a virtual ticket of admissibility; maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver." *Id.* at 608-09.

Here, the state court credited the officers' testimony that Mercedes-Castro "talked with them after being given his *Miranda* rights and did not indicate a desire to invoke any rights during the first part of the questioning." (Doc. 18-2, Ex. 13, p. 412.) As noted above, "[d]etermining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo*, 664 F.3d at 845. Mercedes-Castro has not shown by "clear and convincing evidence" that the state court's credibility determinations were erroneous. 28 U.S.C. § 2254(e)(1). Having found that Mercedes-Castro voluntarily waived his *Miranda* rights before questioning began, the state court reasonably concluded that there was no basis to suppress the first part of the interview. "[I]t goes without saying that counsel is not ineffective for failing to file a meritless suppression motion." *United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013).

The state court also reasonably rejected Mercedes-Castro's *Powell* claim. That claim rested on the assertion that "the *Miranda* warning given to [Mercedes-Castro] was flawed because it did not adequately inform [him] of his constitutional right to have an attorney present throughout [the] interrogation." (Doc. 18-2, Ex. 13, p. 413.) In *Powell*, the Second District Court of Appeal held that the *Miranda* warnings at issue were "constitutionally deficient" because they merely advised the defendant that he could talk to a lawyer "before questioning."[11] *Powell v. State*, 969 So. 2d 1060, 1065-66

---

[11] The defendant in *Powell* received the following *Miranda* warnings: "You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a

(Fla. 2d DCA 2007). The court reasoned that "the person in custody must be clearly advised of the right to have an attorney present not only before interrogation but during interrogation as well." *Id.* at 1065. Although the Florida Supreme Court affirmed this decision, the United States Supreme Court granted certiorari and reversed, holding that the warnings, "in their totality, satisfied *Miranda*." *Florida v. Powell*, 559 U.S. 50, 61 (2010). On remand, the Florida Supreme Court quashed the Second District's decision, concluding that "the *Miranda* warnings at issue [] sufficiently advised the [defendant] of his rights." *State v. Powell*, 66 So. 3d 905, 910 (Fla. 2011).

Thus, because Mercedes-Castro cannot show that his *Powell* argument would succeed under current law, he has failed to satisfy *Strickland*'s prejudice prong. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993) (holding that counsel's failure to make "an objection that would have been supported by a decision which subsequently was overruled" does not "constitute[] 'prejudice' within the meaning of" *Strickland*"); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010) ("The *Fretwell* decision requires that [petitioner] must show not only that he could have successfully challenged PCR DNA testing in 1993, but also that the basis of the challenge would be recognized as valid under current law.").

For all of these reasons, Ground Six is denied.[12]

---

lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview." *Powell*, 969 So. 2d at 1064.

[12] To the extent that Mercedes-Castro faults counsel for not seeking exclusion of his statements under the hearsay rule, the Court notes that any such objection would have failed. "Relevant, out-of-court statements of a party opponent, [such as] the statement[s] at issue [here], are admissible in evidence .

## H.    Ground Seven

Finally, Mercedes-Castro contends that the trial court violated his right to due process by denying his motion for judgment of acquittal as to the armed-burglary count. He argues that "there was no evidence that the [window] had been broken by a part of his body or the instruments which would have consummated the felony." (Doc. 9, p. 13.) Moreover, according to Mercedes-Castro, "there was inconsistent testimony of whether the weapon [] used in breaking the window was also used to shoot the victim." (*Id.*) Thus, Mercedes-Castro contends, the prosecution "failed to prove every element of burglary beyond a reasonable doubt." (*Id.*)

Respondent correctly contends that Mercedes-Castro failed to exhaust this claim. Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A petitioner must do more, however, than "scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). Moreover, a

---

. . and thus are an exception to the hearsay rule." *State v. Elkin*, 595 So. 2d 119, 120 (Fla. 3d DCA 1992).

petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief" to find the "federal claim." *Baldwin*, 541 U.S. at 32.

Mercedes-Castro failed to squarely present his federal constitutional claim on direct appeal. In his initial brief, Mercedes-Castro argued that he "must be acquitted of the charge of armed burglary" because "the circumstantial evidence was not inconsistent with the reasonable hypothesis that there was only a breaking and not an entering." (Doc. 18-2, Ex. 2, p. 9.) But Mercedes-Castro did not cite the United States Constitution or any other source of federal law. Nor did he "label[] the claim 'federal.'" *Baldwin*, 541 U.S. at 32. Instead, Mercedes-Castro relied entirely on Florida caselaw to support his argument that the evidence was insufficient to support his burglary conviction. Because Mercedes-Castro "did not raise any federal claims or cite to any federal cases in state court when presenting his argument on the sufficiency of the evidence," he "failed to fairly present his federal sufficiency-of-the-evidence claim to the Florida state courts and thus did not exhaust his state court remedies as to that claim." *Cascante v. Florida*, 816 F. App'x 429, 431 (11th Cir. 2020); *see also Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 459 (11th Cir. 2015) (holding that federal sufficiency-of-the-evidence claim was not exhausted because petitioner "asserted in his [state appellate] brief that his conviction rested on insufficient evidence, without clarifying whether he intended to bring a federal or a state sufficiency of the evidence claim").

Mercedes-Castro cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a

notice of appeal must be filed within thirty days of the rendition of a sentence). As a result, this claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). And because Mercedes-Castro has not shown that an exception applies to overcome the default, the claim is barred from federal habeas review. Accordingly, Ground Seven is denied.

It is therefore **ORDERED** that Mercedes-Castro's amended petition (Doc. 9) is **DENIED**. The **CLERK** is directed to enter judgment against Mercedes-Castro and to **CLOSE** this case.[13]

## Certificate of Appealability
## and Leave to Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Mercedes-Castro is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2).

---

[13] Mercedes-Castro seeks an evidentiary hearing on his claims. The Court determines that an evidentiary hearing is not warranted. *See Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *Landers v. Warden*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

To obtain a COA, Mercedes-Castro must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mercedes-Castro has not made the requisite showing. Finally, because Mercedes-Castro is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on July 14, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE